FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA GEIGER, )<br> )<br> Plaintiff, )<br> ) No. 15 C 3791<br> v. )<br> ) Judge Amy J. St. Eve<br>AETNA LIFE INSURANCE COMPANY, ) Magistrate Judge Valdez<br> )<br> Defendant. ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, Aetna Life Insurance Company ("Aetna" or "Defendant"), by its attorneys, Gonzalez, Saggio and Harlan, L.L.C., and for its Response in Opposition to Plaintiff's Motion for Summary Judgment[1] and Memorandum in Support of Cross-Motion for Judgment pursuant to Federal Rule of Civil Procedure 56 ("FRCP") and Local Rule 56.1, respectfully states as follows:

**I. INTRODUCTION**

Aetna is entitled to summary judgment because Plaintiff Donna Geiger ("Plaintiff") failed to timely appeal Aetna's decision to terminate her long term disability ("LTD") benefits. In addition, Aetna is entitled to summary judgment in that its decision to terminate Plaintiff's LTD benefits under the any reasonable occupation standard of disability as set forth in Aetna's welfare disability plan with the Sprint/United Management Company ("the Plan") as covered by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), was not arbitrary and capricious. Accordingly, for the reasons set forth herein and the facts in Aetna's Statement of Material Facts

---

[1] Plaintiff's brief violates Local Rule 7.1 and is "subject to being stricken by the court" because it exceeds the 15 page limit, was filed without prior leave of court to exceed that page limit, and fails to contain a "table of contents with the pages noted and a table of cases." (Dkt. 40)

1

("SOF"), Aetna requests that summary judgment be granted in its favor. (SOF ¶¶1-78)

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 321 (7th Cir. 2007) ((citing *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund,* 390 F.3d 1042, 1045 (7th Cir. 2004) (quoting FRCP 56)). With cross-motions, the court construes inferences in favor of the party against whom the motion is brought. *Id.* As set forth herein, even construing all inferences in favor of Plaintiff, there is no genuine issue of material fact and Aetna is entitled to judgment as a matter of law.

## III. FACTS

The Plan defines the **"Test of Disability"** in part as "After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation** solely because of: disease; or **injury.**" (SOF ¶6) A "**reasonable occupation**" is "any gainful occupation for which you are, or may reasonably become, fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of your **adjusted predisability earnings.**" (SOF ¶8)

Plaintiff claimed disability as of October 6, 2009 due to lumbar back pain and subsequently an L5-S1 "discectomy and bilateral ankle pain with evidence of avascular necrosis of the talar bones bilaterally." (SOF ¶15) Plaintiff identified her primary disability as right and left ankle pain. (SOF ¶25) The Plan provides that a period of disability ends on "The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled." (SOF ¶12)

On May 28, 2014, Aetna informed the Plaintiff that it was no longer approving her LTD

benefit claim because her disability was not supported. (SOF ¶22) Aetna stated that two of three peer reviewers had previously opined that Plaintiff could perform full time sedentary work. (SOF ¶28) Aetna stated that since the time of the peer reviews, it had received updated medical records and conducted surveillance that showed that the Plaintiff was able to perform activities that were at least consistent with a sedentary level of functionality. (SOF ¶28)

Aetna also conducted a "comprehensive clinical review" and the medical records did not support a finding of impairment greater than that found by Dr. McPhee on April 15, 2013 and Dr. Yurily Bukalo, Plaintiff's pain medicine specialist, on April 12, 2013 that Plaintiff could function at a sedentary level and could work 8 hours a day. (SOF ¶¶29-32) Aetna stated that "taken together, the available documentation failed to support a level of impairment that would preclude" Plaintiff from carrying or lifting up to 10 pounds; walking and standing occasionally; crouching and squatting occasionally; and having unrestricted use of her hands to finger and handle; which is a sedentary work level. (SOF ¶33)

On the other hand, there was no medical evidence that demonstrated that Plaintiff could not perform sedentary work. (SOF ¶32) While treating internist Dr. Roy had completed an attending physician statement ("APS") that diagnosed pain and no ability to work, Dr. Roy had failed to provide any "measurable clinical documentation" in support of her opinion, any specific restrictions or limitations, a capabilities and limitations worksheet, additional medical records, a quantifiable examination, or additional medical records to support her APS. (SOF ¶¶25, 32)

In addition, on April 24, 2014 Aetna had performed a Transferable Skills Assessment ("TSA") that identified four sedentary level jobs that Plaintiff could perform that were consistent with her capabilities, wages and skills, and were viable in the market. (SOF ¶¶34-40) All four jobs had at wage in excess of 60% of Plaintiff's predisability earnings. (SOF ¶35)

Aetna noted that surveillance on December 14, 17, and 18, 2013 showed Plaintiff driving a

3

sports utility vehicle in snowy weather; walking normally, fluidly, and without "any gait abnormality;" and lifting and carrying objects. (SOF ¶27) Aetna determined that Plaintiff was "no longer disabled from performing any reasonable occupation" and her claim was closed as of May 27, 2014. (SOF ¶42)

In the May 28, 2014 letter, Aetna informed Plaintiff that she had 180 days after the date of the letter to ask for a claim review in writing via fax or mail or she would lose her right to a court challenge of Aetna's decision. (SOF ¶44) The Plan contains a 180 deadline to appeal (SOF ¶44) Plaintiff sent her appeal via regular mail, not fax, on November 21, 2014, one business day before it was due on November 24, 2014, and Aetna received it on December 1, 2014. (SOF ¶45)

On January 20, 2015, Daniel Gutierrez, D.O., a board certified neurological surgeon, completed a peer review, including of Plaintiff's medical records. (SOF ¶47) Dr. Gutierrez noted that a physical examination of the Plaintiff by treating neurologist Dr. Nina Foroohar on October 16, 2014 "revealed a normal gait," and negative straight leg raising. (SOF ¶49) Dr. Gutierrez noted that surveillance video on December 14, 17, and 18, 2013 showed the Plaintiff walking normally, fluidly, and "without any gait abnormality," driving, shopping, and on several occasions carrying a heavy bag. (SOF ¶53)

Dr. Gutierrez concluded that Plaintiff "could reasonably stand and walk for 1 hour at a time followed by a 5-10 minute break." (SOF ¶57) Dr. Gutierrez opined that "In taking into account the claimant's observed functional level on the surveillance videos as well as reported physical exam findings and diagnostic testing results, the claimant does not have any profound functional impairments that are conclusively shown." (SOF ¶ 54) Dr. Gutierrez noted that "there was no evidence of any substantial gait abnormalities and the claimant did appear to have intact strength of the upper extremities." (SOF ¶55) Dr. Gutierrez found that: "The medical documentation supports the claimant could sit, stand, use hands/arms/fingers to function consistently for an 8-hour day"

4

and that "There are no significant functional impairments noted on exam or evident on surveillance video that would support" that she could not. (SOF ¶56)

Aetna sent Dr. Roy and Dr. Foroohar the surveillance video of the Plaintiff for comment; asked them to comment on Plaintiff's medications and any side effects that reasonably impacted her functional capacity; and asked them to review Dr. Gutierrez's report, indicate any areas of disagreement, and provide any additional clinical evidence or observations of their respective opinions. (SOF ¶¶58-59) Aetna informed them that if they did not respond within 5 days, that the assumption would be that they agreed with the report and they did not respond. (SOF ¶¶58-59)

On August 26, 2014, Dr. Feldmann, Plaintiff's treating physician, informed Aetna that he did not evaluate the Plaintiff's functional capacity. (SOF ¶46) On January 23, 2015, Dr. Feldmann opined that the Plaintiff should not stand or walk for more than 15 minutes in an hour. (SOF ¶63) Dr. Feldmann did not state that the Plaintiff could not work. (SOF ¶63) Dr. Gutierrez contacted Dr. Feldmann on February 13 and 16, 2015 to ask him about Plaintiff's current medications and whether they would affect her functional capacity but he failed to respond. (SOF ¶63)

Dr. Gutierrez completed another records review on February 16, 2015 and again concluded that Plaintiff could walk up to an hour after which there should be a five to ten minute break. (SOF ¶¶61, 65) Dr. Gutierrez opined that "In taking into account the claimant's observed functional level on the surveillance videos as well as reported physical exam findings and diagnostic testing results, the claimant does not have any profound functional impairments that are conclusively shown." (SOF ¶64)

On February 24, 2015, Aetna notified Plaintiff that it agreed with its original decision to terminate LTD benefits as of May 27, 2014. (SOF ¶¶ 64-76) Aetna noted that per surveillance video, the physical examination findings, and diagnostic test results, "there is insufficient data to support any profound functional impairment that are conclusively show." (SOF ¶71) "The medical

5

documentation supports that [Plaintiff] could sit stand and use her hands/arms/fingers to function consistently for an 8-hour day." (SOF ¶75) Plaintiff "can reasonably stand and walk for 1 hour at a time followed by a 5-10 minute break." (SOF ¶76) Plaintiff no longer met the definition of disabled under the Plan. (SOF ¶78)

### III. ARGUMENT

#### A. PLAINTIFF FAILED TO TIMELY APPEAL

Aetna first submits that summary judgment should be entered in its favor because Plaintiff failed to timely appeal her benefit termination. *Edwards v. Briggs & Stratton Retirement Plan,* 639 F.3d 355, 359, 365 (7th Cir. 2011). In *Edwards,* the Seventh Circuit affirmed summary judgment in favor of the ERISA plan because the plan did not receive the former employee's appeal until after the 180 day deadline specified in its benefit denial letter. *Id.* at 359, 365. The plaintiff's failure to timely file his administrative appeal of the denial of his benefits evidenced a failure to exhaust his administrative remedies. *Id.* at 362.

Similarly, in this case, Aetna's May 28, 2014 letter informed the Plaintiff that she had 180 days after the date of the letter to ask for a claim review in writing via fax or mail or she would lose her right to a court challenge of Aetna's decision. (SOF ¶¶14, 44) 180 days is a reasonable period of time, the deadline was clear, and it is reasonable to enforce it. (SOF ¶¶14, 44); *Edwards,* 639 F.3d at 362. 180 days after May 28, 2014 is Monday, November 24, 2014, fact of which the court can take judicial notice. (SOF ¶45); *see also Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, fn. 14 (7th Cir. 1985); *Brown v. Piper,* 91 U.S. 35, 37-38, 42 (1875); http://www.timeanddate.com/calendar/?country=1&year=2014.

Rather than fax the appeal, Plaintiff chose instead to send it via mail on November 21, 2014, one business day before it was due. (SOF ¶45) Aetna received Plaintiff's appeal of her termination of her LTD on December 1, 2014, after the deadline under the Plan and in the letter. (SOF ¶¶14, 45);

*Edwards,* 639 F.3d at 359, 362, 365. Plaintiff's appeal was untimely. *Id.* at 359, 362, 365. Likewise, Plaintiff delayed with submitting her claim. (SOF ¶¶16-18) Plaintiff's failure to timely appeal her benefit termination warrants the entry of summary judgment in Aetna's favor. *Id.*

## B. AETNA'S DECISION WAS NOT ARBITRARY AND CAPRICIOUS

The Plan contains discretionary language vesting Aetna with authority to review benefit denials; specifically to determine to what extent and whether beneficiaries and employees are entitled to benefits, and to construe disputed or doubtful Plan terms. (SOF ¶5) Aetna "shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously." (SOF ¶5)

The *de novo* standard of review applies unless, as in this case, the Plan provides that the fiduciary has the discretionary authority to construe the Plan's terms or determine benefit eligibility. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Since the Plan contains discretionary language, the "highly deferential" standard of review applies. *Amsted Indus., Inc. v. Armstrong,* 211 F.Supp.2d 1067, 1071 (N.D.Ill. 2002) (citing *Perlman v. Swiss Bank Comprehensive Disability,* 193 F.3d 975, 981-82 (7th Cir. 1999)); *Williams,* 509 F.3d at 321.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Semien v. Life Ins. Co. of N. Am.,* 436 F.3d 806, 812 (7th Cir. 2006) ((quoting *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir.1996) (internal citations omitted)"); *see also Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (1995). "It is not [the court's] function to decide whether we would reach the same conclusion" as Aetna. *Davis v. Unum Life Ins. Co. of Am.,* 444 F.3d 569, 576 (7th Cir. 2006)(quoting *Trombetta,* 102 F.3d at 1438). A court only ensures that there is "rational support" in the administrative record for Aetna's decision, which there is. *Speciale v. Blue Cross and Blue Shield Ass'n.,* 538 F.3d 615, 621 (7th Cir. 2008) (quoting *Davis,* 444 F.3d at 576.)

7

As long as the Plan makes a decision that is informed and states an explanation that is satisfactory based on the facts, which Aetna did, its decision will be upheld. *Mote v. Aetna Life Ins. Co.,* 502 F.3d 601, 606 (7th Cir. 2007) (citing *Herman v. Cent. States, Se. & Sw. Areas Pension Fund,* 423 F.3d 684, 692 (7th Cir. 2005) (quoting *Carr,* 195 F.3d at 294); (SOF ¶¶22-44; 66-78) A satisfactory explanation is one in which the Plan provides specific reasons for its denial; but the Plan need not explain the process used behind the reasoning. *Mote,* 502 F.3d at 606. Plan's LTD

Aetna's decision to terminate the Plaintiff's LTD benefits will only be overturned if the decision was "downright unreasonable." *Williams,* 509 F.3d at 321 ((citing *Tegtmeier,* 390 F.3d at 1045 (quoting *Carr,* 195 F.3d at 295); *Amsted Indus., Inc.*, 211 F.Supp.2d at 1071 (citing *Firestone,* 489 U.S. at 114-15). The "court will uphold the Plan's determination as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Williams,* 509 F.3d at 321 ((citing *Sisto v. Ameritech Sickness & Accident Disability Plan,* 429 F.3d 698, 700 (7th Cir. 2005)(quoting *Houston v. Provident Life & Accident Ins. Co.,* 390 F.3d 990, 995)). While Aetna's decision may be upheld under any one of the three standards set forth in *Williams*, all three apply. *Id.*; (SOF, ¶¶1-78)

"A conflict of interest is one factor to consider when deciding whether a plan administrator's decision is arbitrary and capricious." *Finaly v. Beam Global Spirits & Wine, Inc.,* 872 F.Supp.2d 730, 741 (N.D.Ill. May 30, 2012). Its weight is dependant on whether the conflict influenced the benefit decision. *Id.* at 738. Plaintiff has not presented any evidence that a conflict of interest impacted Aetna's decision or that Aetna's decision was influenced improperly. *Id.* at 741-42. "Inherent conflict...is not enough to show an actual bias." *Mers v. Marriott Int'l. Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998). Courts "presume that [Aetna] is acting

8

neutrally unless" Plaintiff provides "specific evidence of actual bias that there is a significant conflict." *Id.* Since Plaintiff has not presented "any specific evidence of a conflict of interest…we shall not consider that factor in our determination of the reasonableness of [Aetna's] decision." *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 960 (7th Cir. 2001).

Plaintiff has failed to point to any evidence of actual bias. (Dkt. 40) Instead, Plaintiff inexplicably cites to a 10th Circuit decision wherein the court addresses fiduciary obligations and asks, without citation to case law or factual support, that the court infer that the 10th Circuit dicta implies something in this case. Failure to cite to case law waives that argument. *Schmude v. Sheehan,* 2004 WL 887387, at *3 (2004). In the converse, Aetna sets forth in this brief cases in which the court has ruled in its favor on summary judgment in arbitrary and capricious cases to counteract any purported, far reaching inference that Aetna is not aware of its fiduciary duties. *Williams,* 509 F.3d at 321; *Mote,* 502 F.3d at 606.

While Plaintiff claims that she was denied a full and fair review, she received one. *Id.* at 324. For Aetna to substantially comply with a full and fair review, it must weigh the evidence and articulate the reasons for rejecting evidence within "reasonable limits," which Aetna did. *Id.* "The dispute here is not about the adequacy of [Aetna's] explanations…for the denial. Nor could it be. [Aetna's] denial letters to [Plaintiff] sufficiently detailed Aetna's reasoning. *Davis*, 444 F.3d at 578; *Williams,* 509 F.3d at 323; (SOF ¶¶22-44, 66-78).

### C. AETNA PROPERLY TERMINANTED PLAINTIFF'S BENEFITS

Aetna has a "duty to all plan participants to investigate claims and make sure to avoid paying benefits to claimants who are not entitled to receive them." *Davis,* 444 F.3d at 575. Aetna's decision to engage the advice of Dr. Gutierrez, an independent medical consultant, evidences its thorough investigation. *Id.* ((citing *Hightshue v. AIG Life Ins. Co.,* 135 F.3d 1144, 1148 (7th Cir 1998). Similar to Dr. Bukalo, Plaintiff's treating physician, (and Dr. McPhee), Dr. Gutierrez opined that the Plaintiff

9

could work 8 hours a day in a sedentary position. (SOF ¶¶30, 31, 56)

Dr. Gutierrez is qualified to render his medical opinions. *Davis,* 444 F.3d at 576. It is well settled that doctors can reach their professional opinions based on a review of the records. *Id.* at 575. "In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." *Id.* Plaintiff is incorrect that the Plan requires Aetna to perform an independent medical examination. (App. 104)

Dr. Gutierrez determined that per "the reported physical exam findings and diagnostic testing results, the claimant does not have any profound functional impairments that are conclusively shown" and that Plaintiff could work 8 hours a day in a sedentary job." (SOF ¶¶55, 64); *Davis,* 444 F.3d at 579. The vocational consultant identified 4 jobs that Plaintiff could work. *Id.* at 576. "That is rational support. This evidence makes it 'possible' for [Aetna] to 'offer a reasoned explanation' for its decision to deny benefits, and, under the arbitrary-and-capricious standard, we must respect [Aetna's] decision." *Id.* (citing *Semien*, 436 F.3d at 812.

Dr. Gutierrez's view that the Plaintiff "was not physically incapable of performing sedentary activities is not inconsistent with the views" of Plaintiff's treating physicians. *Davis,* 444 F.3d at 57. Examination by Dr. Nina Foroohar on October 16, 2014 "revealed a normal gait," and negative straight leg raising. (SOF ¶49) Dr. Foroohar did not restrict the Plaintiff from working or respond to Aetna's requests for further information. SOF ¶ 49) On January 23, 2015, Dr. Feldman did not indicate that Plaintiff could not work. (SOF, ¶61)

Although Dr. Roy saw the Plaintiff for evaluation on December 23, 2013, no physical examination was performed. (SOF ¶50) While Dr. Roy restricted the Plaintiff from working, she failed to present any support for her opinion. (SOF ¶¶25, 32) Unsupported and/or unsupported conclusions are not sufficient to prove disability. *Williams,* 509 F.3d at 323. The lack of adequate

10

support for the APS meant that Aetna did not act arbitrarily and capriciously. *Id.* Moreover, "Mandatory deference to treating physicians is completely unwarranted." *Black & Decker Disability Plan v. Nord,* 123 St.Ct. 1965 (2003). Nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 1972.

In addition, "There is a distinction between whether the Plaintiff had pain and "how much an individual's degree of pain…limits his functional capacity." *Williams,* 509 F.3d at 322. Plaintiff has to prove that the her subjective complaints of pain limited her functional abilities, which she has failed to do. Dr. Feldmann did not evaluate the Plaintiff's functional capacity. *Id.* (SOF ¶46) Dr. Roy failed to provide any "measurable clinical documentation" in support of her opinion, any specific restrictions or limitations, a capabilities and limitations worksheet, additional medical records, a quantifiable examination, or additional medical records to support her APS. (SOF ¶¶25, 32) When there is a lack of a specific data that Geiger's complaints of pain limited her functional impairment, Aetna did not act arbitrarily or capriciously. *Williams,* 509 F.3d at 323. While Plaintiff erroneously argues that Aetna failed to consider her subjective complaints of pain as to whether she could work, not only did Aetna consider this, but subjective complaints of pain are not determinative of Plaintiff's "entitlement to benefits." *Id.* Whether Plaintiff has pain "is not conclusive on the question whether she can work." *Achermann v. Aetna Life Ins. Co.,* 689 F.3d 726, 730 (7th Cir. 2012).

Aetna can "require accurate documentation from a treating physician that the [Plaintiff's] subjective symptoms of pain…limit [her] functional abilities in the workplace. *Williams,* 509 F.3d at 323. Plaintiff did not supply any such documentation. Perhaps realizing this, Plaintiff chose instead to try to divert attention by citing to two decisions in two district courts wherein pain was ostensibly addressed. (Dkt. 40, p. 12) However, millions of individuals work with pain. *Achermann,* 689 F.3d at

11

730; *see aslo Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cit. 2004) ("Many people with serious heart conditions work at stressful jobs for years without ill effects.")

Aetna also relied on surveillance video. (SOF ¶¶27, 53, 61) The reasonableness of Aetna's decision is made stronger after considering the videotape and Dr. Gutierrez's records review. *Patterson*, 70 F.3d at 506. The surveillance video showed the Plaintiff ambulating without difficulty, and Dr. Gutierrez, who reviewed the video, concluded that the Plaintiff could work. *Id.* (doctors who watched the videotape of the plaintiff walking without a cane concluded that he could work); *Mote*, 502 F.3d at 04-05 (the doctor relied on videotape that showed the Plaintiff running errands, driving, and loading groceries into her vehicle, which evidenced her functional capabilities.) "The surveillance materials provide compelling evidence that [Plaintiff] was capable of" working. *Patterson*, 70 F.3d at 506.

In addition, Plaintiff claimed that she could not walk well, and the videotapes showed otherwise. *Mote*, 502 F.3d at 060 (the video showed the plaintiff doing things that she could not do); (SOF ¶¶26, 27, 53, 61) The use of surveillance in conjunction with medical evidence to assess an inconsistency between the claimant's reported and demonstrable abilities is permissible. *Marantz v. Permanente Med.. Group, Inc. Long Term Disability Plan,* 687 F.3d 320, 329, 331 (7th Cir. 2011) (the plaintiff claimed pain and that it was difficult to move, but she, like Plaintiff herein, was videotaped shopping and carrying bags.) The videotapes alone did not determine Aetna's decision, and Aetna also relied on the opinion of Dr. Gutierrez, a comprehensive clinical review, the medical records of the Plaintiff, and a TSA.

On the other hand, Plaintiff relies on dated medical documentation from treatment that was allegedly rendered from 2007 and 2009; records of treating physicians that were not based on an assessment of Plaintiff's functional capacity and/or recent examination; lay witness statements that Plaintiff appears to be arguing should trump the opinions of board certified physicians as to the

12

Plaintiff's medical conditions[2]; and what happened three years ago in 2012 when Aetna terminated Plaintiff's LTD benefits before reinstating them in 2013. (Dkt. 40, p.p. 3, 7) Notably, medical evidence that is well over a year old should not be considered to determine disability in 2014 or demonstrate an inability to perform the job duties of any reasonable occupation. *Walsh v. Long Term Disability Coverage for all Employees Located in United States of DeVry, Inc.*, 601 F.Supp.2d 1035, 1044-45 (N.D.Ill. 2009) In addition, if anything, Aetna's prior decision in 2013 to reinstate previously terminated benefits consistent with Dr. Robert Cirincione's peer review as opposed to Dr. Phee's that Plaintiff could work shows that the objectivity of its reviewing physicians and that it engaged in meaningful review of its benefit decisions. *Davis,* 444 F.3d at 575.

Plaintiff cannot overcome summary judgment by merely raising "debatable points." *Finaly* 872 F.Supp.2d at 738 (citing *Sisto,* 429 F.3d at 701.) Plaintiff acknowledges: that there was a TSA performed by Janet Clifton, but quibbles about the process; that Aetna relied on surveillance video of the Plaintiff, but fails to offer a substantive objection to the video other than referring to a neighbor statement and saying that she was "mostly" inactive; and that Dr. Gutierrez (and Dr. McPhee) performed peer reviews of her records, but erroneously claims that Dr. Gutierrez only exclusively focused on her ankle and erroneously argues that Dr. Gutierrez ignored her cervical spine condition and pain, which is contradicted by Dr. Gutierrez's peer reports and Aetna's letters. (SOF, ¶¶24, 49, 50, 61, 67-68) Those letters also indicate that Plaintiff failed to have recommended surgery, even surgery for which there is a good prognosis. (SOF ¶¶20, 70) The Plan allows benefits to be terminated for this reason. (SOF ¶12); *Davis,* 444 F.3d at 576 (There was rational support in the record for the decision..)

    D.    **PLAINTIFF CAN WORK ALL 4 JOBS**

---

[2] Plaintiff relies on *DiPietro v. Prudential Ins. Co. of Am.*, 2004 WL 626818, at *6 (N.D.Ill. March 26, 2004), wherein the plan, unlike Aetna, provided no support for its opinions. Witness statements from acquaintances and co-workers are viewed with skepticism. Id. Aetna reviewed all of the records that it was provided, although not every single document was addressed in its letter. (SOF ¶67)

It is clear that Plaintiff was not totally disabled under the Plan under the any reasonable occupation standard of disability. *Walsh,* 601 F.Supp.2d at 1040. "A 'general' disability provision provides benefits if the claimant is unable to perform *any* job for which he is qualified." *Hammond v. Fidelity & Guaranty Life Ins. Co.*, 965 F.2d 428, 430-31 (7th Cir. 1992). "If Plaintiff required additional training or education to perform the jobs, this would not be improper under the terms of the Plan." *Rodriguez v. UNIM Life Ins.,* 82 F.Supp.2d 828, 831 (N.D.Ill. 1999); (SOF ¶8).

The TSA has identified 4 sedentary occupations Plaintiff can perform that they were compatible with Plaintiff's transferable skills, wages, and capabilities and involved sitting most of the time. (SOF ¶¶34-40) This is sufficient for the skills analysis. *Cosme v. Ameritech C777 Inc.,* 2004 WL 1093296 at *4 (N.D.Ill. 2004). Dr. Gutierrez found that the Plaintiff could work 8 hours a day at sedentary work, and could walk up to an hour followed by a 5 to 10 minute break and could use her upper extremities and fingers. (SOF ¶¶52, 65) The only weight restriction that Plaintiff had was not lifting in excess of 30 pounds from April 2, 2012 through January 1, 2014. (SOF ¶¶57, 65) The jobs were within the definition of sedentary work and Dr. Gutierrez's restrictions. (SOF ¶¶34-40, 52, 57, 65) All jobs had wages at 60% of Plaintiff's predisability earning. (SOF ¶35)

Plaintiff argues, without citation to case law, in an argument that is now waived, that the TSA was insufficient because it used a computer program. *Schmude,* 2004 WL 887387, at *3. However, "A TSA, properly conducted, takes a claimant's skills, experience and disability into account and produces a list of potential jobs." *O'Reilly,* F.3d 955 at 962. "ERISA does not require a 'full-blown' investigation, but it does demand a 'reasonable inquiry' into a claimant's medical condition and his vocational skills and potential." *Id.* at 961. A vocational rehabilitation consultant, like Janet Clifton, can rely on a computer program to perform a TSA. *Id.* at 961.

Plaintiff argues against Aetna's TSA but fails to cite to any case law that the TSA was insufficient, waiving that argument. *Schmude,* 2004 WL 887387, at *3 (2004). Plaintiff must show that

14

Aetna's conclusion that she could work the identified jobs was unreasonable, and she has not. *O'Reilly*, 272 F.3d at 962. Since Plaintiff has failed to identify any evidence that she could not perform the jobs that Aetna identified that would potentially be available to her, Aetna submits that it cannot be concluded that it acted arbitrarily and capriciously. *Id.* at 962-63.

### IV. **CONCLUSION**

For the foregoing reasons, Aetna requests that summary judgment be entered in its favor plus an award of attorney's fees and costs. *Id.* at 579.FRCP 54; 29 U.S.C. §1132(g) (1). Aetna will file the appropriate motion within 14 days of judgment.[3] FRCP 50 (d)(2)(B).

WHEREFORE, for the foregoing reasons, Defendant, Aetna Insurance Company, respectfully requests that this Honorable Court grant its Motion for Summary Judgment, enter an award of costs and attorney's fees in favor of the Defendant, deny Plaintiff's Motion for Summary Judgment, and for any other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

AETNA INSURANCE COMPANY

s/Moyenda Mutharika Knapp
By: One of Its Attorneys

Elizabeth A. McDuffie
Moyenda Mutharika Knapp
Gonzalez, Saggio and Harlan, LLC
180 N. Stetson Avenue, Suite 4425
Chicago, IL 60601
Phone 312-236-0475 / Fax 312-236-1750
E-mail: LizMcDuffie@gshllp.com ; Moyenda_Knapp@gshllc.com

---

[3] Aetna contests an award of attorneys' fees, costs, and prejudgment interest for Plaintiff. *Hakim v. Accenture United States Pension Plan,* 901 F.Supp.2d 1045, 1054, 1051-52, 1055 (N.D.Ill. 2012). Plaintiff's request for attorney's fees should be denied in light of Plaintiff not being disabled under the Plan, an absence of bad faith, and that Plaintiff has not established that Aetna's position was not "substantially justified." *Id.; Weitzencamp v. Unum Life Ins. Co. of Illinois*, 500 Fed.Appx. 506, 507-08 (7th Cir. 2008); *Trustmark Life Ins. Co. v. University of Chicago Hosp.,* 207 F.3d 876, 885 (7th Cir. 2000). (Absent bad faith, each party should bear its own attorney's fees). In addition, Plaintiff asserts that reinstatement would be appropriate if there was a decision in her favor because Aetna's decision was arbitrary and capricious, which, as set forth *supra,* is belied by the facts. However, remand would be an appropriate course if Plaintiff prevails, which Aetna submits that she should not. *Walsh,* 601 F.Supp.2d at 1042.

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 14, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: mdebofsky@debofsky.com; and I certify that I have sent by U.S. Mail the document to the following non CM/ECF participants: N/A.

                                                  s/Moyenda Mutharika Knapp

Elizabeth A. McDuffie
Moyenda Mutharika Knapp
Two Prudential Plaza
180 N. Stetson Avenue, Suite 4425
Chicago, IL 60601
Phone 312-236-0475
Fax 312-236-1750
E-mail: Liz McDuffie@gshllp.com
MoyendaKnapp@gshllc.com