**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA GEIGER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-3791 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| AETNA LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Aetna Life Insurance Company has moved for attorneys' fees and costs pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(1), and Federal Rule of Civil Procedure 54. For the following reasons, the Court grants in part and denies in part Aetna's amended motion [72].

## BACKGROUND

The Court presumes familiarity with the facts of this case, which it recounted in detail in its June 24, 2016 Opinion denying Plaintiff Donna Geiger's ("Geiger") motion for summary judgment and granting Aetna's cross-motion for summary judgment. (R. 61.) The Court, however, briefly summarizes the facts before commencing its analysis.

Geiger sued Aetna under ERISA seeking long-term disability benefits under an employee welfare benefit plan (the "Plan"). (*Id.* at 1–2.) In October 2009, Geiger left her job at Sprint Nextel claiming a disability due to "lumbar back pain with subsequent L5-S1 discectomy and bilateral ankle pain with evidence of avascular necrosis of the talar bones bilaterally." (*Id.* at 5.) An October 2009 report from Dr. Ami Kothari confirmed Geiger's diagnosis of "avascular

necrosis of the right talus" and "bilateral ankle pain." (*Id.*) On April 5, 2010, Dr. James DeOrio diagnosed Geiger with "bilateral talar avascular necrosis," which led to Geiger undergoing a left ankle arthroscopy and full ankle replacement in December 2010. (*Id.* at 5–6.) In April 2010, Aetna approved Geiger's claim for long-term disability benefits, concluding that she was disabled from her own occupation as an account executive. (*Id.* at 6.) That same month, the Social Security Administration approved Geiger's request for Social Security benefits for herself and her dependent minor son. (*Id.* at 7.)

In August 2012, however, Aetna informed Geiger that she no longer met the Plan's disability definition. (*Id.*) Geiger appealed, and, in May 2013, Aetna overturned its decision. (*Id.* at 8–9.) Aetna reinstated Geiger's long-term disability benefits, concluding that she met the definition of being totally disabled from any gainful occupation. (*Id.* at 9.) As part of its review process, Aetna had engaged two doctors, Malcolm McPhee and Robert Cirincione, to perform independent physician peer reviews of Geiger's medical files. (*Id.* at 8.) While Dr. McPhee concluded that Geiger's ankle condition would not preclude her from performing sedentary work, Dr. Cirincione disagreed. (*Id.* at 8–9.)

Later, in May 2014, Aetna terminated Geiger's long-term disability benefits for the second time. (*Id.* at 10.) Aetna based this decision on a number of factors including (1) video surveillance footage showing Geiger driving a car, climbing in and out of the driver's seat of a Sport Utility Vehicle, shopping and walking with a normal gait, and not demonstrating outward signs of pain; (2) physician reviews of Geiger's medical history; (3) a nurse's clinical review of Geiger's medical file; and (4) a "transferrable skills assessment" to determine if any reasonable occupation existed for which Geiger was suited. (*Id.* at 10–15.)

Geiger appealed, relying on evidence that included various witness statements as well as reports from Dr. Luz Feldman, a pain treatment specialist; Dr. Debjani Roy, Geiger's primary care physician; and Dr. Mina Foroohar, a neurosurgeon. (*Id.* at 15.) Based on a July 2014 appointment, Dr. Feldman noted Geiger's persistent neck pain as well as the recent success of Geiger's pain treatment. (*Id.*) Dr. Foroohar reported that, based on an October 2014 appointment, Geiger suffered from "[c]ervical spondylosis with stenosis, most significant at C5/6 and C6/7. EMG with C5/6 and C6/7 and C7/8 radiculopathy. [Geiger] can consider surgery to include anterior cervical discectomy C5/6 and C6/7 with removal of osteophytes with allograft fusion with plating and instrumentation." (*Id.* at 16.)

Aetna engaged Dr. Daniel Gutierrez, a neurological surgeon, to complete an independent physician peer review. (*Id.* at 17.) He concluded that, based on the surveillance videos as well as Geiger's medical records, (1) Geiger did not have "any profound functional impairments that are conclusively shown," and (2) she could stand, sit, and use her arms, hands, and fingers consistently for an eight-hour day. (*Id.* at 19.) After receiving Dr. Gutierrez's analysis, Aetna reached out to Geiger's doctors for comment. (*Id.* at 20.) Dr. Feldmann responded by noting that Geiger's level of activity in the surveillance footage was a result of substantial amounts of pain medication, that she should not stand or walk for more than fifteen minutes per hour, and that Dr. Gutierrez did not include Geiger's acute cervical radiculopathy in his report. (*Id.*) Dr. Gutierrez then completed another report in which he did not alter his original conclusion after taking into account Dr. Feldmann's concerns. (*Id.* at 21.)

In February 2015, after reviewing Geiger's arguments and supporting materials, Aetna denied her appeal. (*Id.*) Geiger then filed the current lawsuit that resulted in the Court granting summary judgment to Aetna in a thirty-seven-page opinion. (*Id.* at 37.) Geiger has since

appealed to the Seventh Circuit, and Aetna has brought the current motion for $40,000 in attorneys' fees[1] and $17.50 in costs for postage. (R. 72, Def.'s Am. Mot. Attorney's Fees, at 1, 13.)

## LEGAL STANDARDS

### I. Attorneys' fees

In ERISA actions "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *see Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010); *Temme v. Bemis Co.*, 762 F.3d 544, 547 (7th Cir. 2014) (per curiam).[2] "[A]s long as the fee claimant has achieved some degree of success on the merits," a court's discretion to award that claimant fees is "considerable." *Chesemore v. Fenkell*, Nos. 14-3181, 14-3215, 15-3740, 2016 WL 3924308, at *10 (7th Cir. July 21, 2016) (published opinion) (internal quotation marks omitted) (quoting *Hardt*, 560 U.S. at 245); *see also Temme*, 762 F.3d at 549.

The Seventh Circuit has recognized two tests that district courts may use to guide their discretion when considering a motion for attorneys' fees under ERISA. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505–06 (7th Cir. 2011); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2016 WL 2958323, at *2 (N.D. Ill. May 23, 2016) (published opinion) (citing *Temme*, 762 F.3d at 550), *appeal docketed*, No. 16-2845 (7th Cir. July 1, 2016). The first test weighs "whether the position of the party

---

[1] Aetna indicates that "the parties have conferred in an effort to agree to a fee amount if fees are awarded and have agreed that if fees are awarded that they be awarded in the amount of $40,000." (R. 72, Def.'s Am. Mot. Attorney's Fees, at 13.) Curiously, Geiger admits that she "ultimately agreed to the $40,000 figure," but nevertheless appears to simultaneously challenge the amount by arguing that "Aetna does not merit an award in an amount anywhere near $40,000." (R. 73, Pl.'s Mem. Opp., at 8.)

[2] For actions "by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded," a different fee provision applies that is not relevant here. *See* 29 U.S.C. § 1132(g)(1)–(2).

4

against whom the fees are sought was 'substantially justified,'" *Temme*, 762 F.3d at 549; *Kolbe*, 657 F.3d at 506, meaning "justified to a degree that could satisfy a reasonable person," *Kolbe*, 657 F.3d at 506 (quoting *Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 884 (7th Cir. 2000)). A "substantially justified" position is "something more than non-frivolous, but something less than meritorious—and taken in good faith." *Jackman Fin. Corp v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011); *Pa. Chiropractic*, 2016 WL 2958323, at *2. Courts using the substantially-justified test consider "a party's posture during the case as a whole, rather than treating each segment as an 'atomized line-item[].'" *Temme*, 762 F.3d at 551 (alteration in original) (quoting *Comm'r v. Jean*, 496 U.S. 154, 161–62 (1990)).

Under the second test, courts consider:

> 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions.

*Kolbe*, 657 F.3d at 505–06 (quoting *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998), *abrogated on other grounds by Hardt*, 560 U.S. at 253–55). No one factor is dispositive. *See Boland v. Thermal Specialties, Inc.*, 966 F. Supp. 2d 8, 11 (D.D.C. 2013); *Bd. of Trs. of the Laborers Pension Trust Fund for N. Cal. v. Pastran*, No. C 09-05979 WHA, 2010 WL 3789836, at *5 (N.D. Cal. Sept. 27, 2010).

"[B]oth tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Kolbe*, 657 F.3d at 506 (internal quotation marks omitted) (quoting *Quinn*, 161 F.3d at 478); *Pa. Chiropractic*, 2016 WL 2958323, at *3. "For this reason, the five-factor test is used

to 'structure or implement, rather than to contradict' the substantially justified test." *Bd. of Trustees of the Auto. Mechs.' Local No. 701 Union & Indus. Welfare Fund v. Brown*, No. 12-cv-10268, 2015 WL 1880375, at *2 (N.D. Ill. Apr. 23, 2015) (quoting *Lowe v. McGraw-Hill Co.*, 361 F.3d 335, 339 (7th Cir. 2004)).  The Court notes, however, that it is not necessary to find "that the party ordered to pay fees has engaged in harassment or otherwise litigated in bad faith." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011).

There is "a 'modest presumption' in favor of awarding fees to the prevailing party, though that presumption can be rebutted.'" *Jackman*, 641 F.3d at 866.  Where a defendant seeks fees from a losing plaintiff, however, that presumption is "weaker."  *Pa. Chiropractic*, 2016 WL 2958323, at *2; *see Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 719–20 (7th Cir. 1981) ("Although the five factors used as guidelines above do not explicitly differentiate between plaintiffs and defendants, consideration of these factors will seldom dictate an assessment of attorneys' fees against ERISA plaintiffs."); *see also Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011) (per curiam) (describing the five-factor as producing a "favorable slant toward ERISA plaintiffs," which "is necessary to prevent the chilling of suits brought in good faith" (quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000))).  Indeed, the Seventh Circuit has said that the "failure to 'award attorneys' fees . . . to ERISA defendants, even "prevailing" defendants, would rarely constitute an abuse of discretion.'" *Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 121 (7th Cir. 1989) (quoting *Marquardt*, 652 F.2d at 719); *see Hakim v. Accenture U.S. Pension Plan*, 901 F. Supp. 2d 1045, 1049 (N.D. Ill. 2012).

## II.    Costs

The issue of what standard governs a motion for costs in an ERISA action was, for a time, somewhat complicated.  Federal Rule of Civil Procedure 54(d)(1) creates a presumption in

favor of awarding costs to a prevailing party "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise." *See Burrell v. United Parcel Serv., Inc.*, No. 14-cv-5127, 2016 WL 4720024, at *4 (N.D. Ill. Sept. 8, 2016) (citing *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006)). Section 1132(g)(1), in contrast, appears to give a district court greater discretion than Rule 54 in determining whether to award costs. *See Loomis*, 658 F.3d at 674. As Judge Pallmeyer described in *Lingis v. Motorola, Inc.*, 868 F. Supp. 2d 771, 774 (N.D. Ill. 2012), Seventh Circuit case law from the late 1980s until the late 2000s is unclear as to whether § 1132(g)(1) is a statute that "provides otherwise" within the meaning of Rule 54(d)(1) and therefore supplants the rule in motions for costs under ERISA. Then, in 2011, the Seventh Circuit "strongly indicat[ed]" in dicta that § 1132(g)(1) indeed supplants Rule 54. *Lingis*, 868 F. Supp. 2d at 774–75 (citing *Loomis*, 658 F.3d at 674).

In 2013, however, the Seventh Circuit explained that although it had "[a]t times . . . taken the view that Section 1132(g) 'provides otherwise,' and that costs are therefore unavailable under Rule 54(d) in ERISA actions," this "approach must be reconsidered in light of the Supreme Court's recent decision in *Marx v. General Revenue Corp.*, 133 S. Ct. 1166 (2013)." *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013). As the Seventh Circuit described, the Supreme Court in *Marx* explained that (1) "the decision whether to award costs ultimately lies within the sound discretion of the district court," *id.* (quoting *Marx*, 133 S. Ct. at 1172), and (2) "a statute 'provides otherwise' for purposes of Rule 54(d) only if it is literally contrary to the rule, in the sense that it constricts discretion that the rule recognizes," *id.* (citing *Marx*, 133 S. Ct. at 1173). Applying the *Marx* approach to ERISA, the Seventh Circuit concluded that it "s[aw] nothing contrary to Rule 54(d) in [§ 1132(g)]." *Id.* Thus, the Court properly considers Aetna's motion for costs under Rule 54 and its presumption in favor of

awarding costs to the prevailing party. *See id.*; *Matz v. Household Int'l Tax Reduction Investment Plan*, No. 96 C 1095, 2014 WL 2699944, at *1 (N.D. Ill. June 12, 2014); *see also Chesemore*, 2016 WL 3924308, at *10 (explaining that (1) under Rule 54(d), the prevailing party presumptively recovers its costs, (2) under both Rule 54(d) and § 1132(g), the court has discretion whether to award costs, and (3) "costs and attorney's fees need not be awarded in tandem").

When exercising their discretion whether to award costs under Rule 54, courts consider whether the cost is recoverable and whether the amount assessed is reasonable and necessary to the litigation. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (per curiam). 28 U.S.C. § 1920 provides the list of recoverable costs. *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009). Although postage is not a specifically enumerated cost under § 1920, the Seventh Circuit "has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges." *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). *But see Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217 (7th Cir. 1975) (explaining that "ordinarily," charges for postage are not recoverable as costs).

## ANALYSIS

### I.     The Court declines to award attorneys' fees to Aetna

As a threshold matter, Aetna achieved some "degree of success on the merits" when the Court granted its motion for summary judgment in August 2016. *See Kieszkowski v. PersonalCare Ins. of Ill., Inc.*, No. 09 C 01936, 2011 WL 3584324, at *9 (N.D. Ill. Aug. 12, 2011) ("There is of course no doubt that [the defendant] achieved 'some degree of success on the merits,' as the Court has decided to award summary judgment in its favor."); *see also Williams v.*

*Metro. Life Ins. Co.*, 609 F.3d 622, 634–35 (4th Cir. 2010).  The question remains, however, whether the Court should exercise its discretion to award fees.

As explained above, under either of the two tests that courts use to determine whether to award attorneys' fees under § 1132(g)(1), the ultimate question is: "[W]as the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?"  *Kolbe*, 657 F.3d at 506 (quoting *Quinn*, 161 F.3d at 478).  In this case, considering the litigation as a whole, *see Temme*, 762 F.3d at 551, the Court concludes that Geiger's position was substantially justified and taken in good faith.  Given the deferential standard of review in ERISA denial-of-benefit cases in which the plan administrator has discretionary authority, (*see* R. 61 at 23–24), Geiger faced an uphill battle to prevail in her claim for benefits.  She did not, however, enter this battle without ammunition.  Multiple doctors diagnosed Geiger with conditions affecting her back and ankles, and those diagnoses were severe enough to require some surgery as well as pain medication.  Even Dr. Gutierrez, who opined that Geiger could work, conceded that Geiger had "fairly significant necrosis and osteochondral pathology that would become very painful with prolonged standing and/or walking."  (*Id.* at 34.)  Based on the existence of the medical evidence supporting Geiger's claim, the Court cannot say that her position lacked a "solid basis."  *Hakim*, 901 F. Supp. 2d at 1053 (quoting *Prod. & Maint. Emps.' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992)).

Geiger also had a reasonable basis to challenge the key evidence that led to Aetna's ultimate denial of benefits—the surveillance footage of her driving and shopping.  While Aetna reasonably found the footage to be compelling evidence against Geiger's claim, the surveillance footage showed Geiger shopping on a handful of select days, not engaging in extensive physical activity.  Second, Geiger's argument attempting to undermine the surveillance footage had a

solid basis in law. Geiger contended that the surveillance footage did not justify a conclusion that she "could . . . work on a regular and consistent basis." (R. 40, Mem. Supp. Pl.'s Mot. Summ. J., at 13.) To support this line of argument, she cited *Skibbe v. Metro. Life Ins. Co.*, in which the court explained that "[t]he limited footage obtained by the surveillance videos and photographs was ultimately inconclusive because it did not prove that [the plaintiff] was able to perform any job related activities *on a daily basis or continue them for an extended period of time*." No. 05 C 3658, 2007 WL 2874035, at *11 n.3 (N.D. Ill. Sept. 24, 2007) (emphasis added).[3] While *Skibbe* and the cases discussed in the footnote below did not ultimately carry Geiger to victory, *see Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 329–31 (7th Cir. 2012) (explaining that surveillance footage supported a denial of benefits, but noting that "the weight given to surveillance evidence . . . depends both on the amount and nature of the activity observed"), they at least supported the reasonableness of her litigation position.

That Aetna not once but twice approved Geiger's disability claim bolsters the reasonableness of her litigation position, as it validates the reliability of the medical evidence upon which she relied. Moreover, the Social Security Administration approved Geiger's claim— although it of course did not make its decision under the Plan using the same evidence Aetna had before it—further suggesting that her medical conditions were serious. *See Williams v. Aetna*

---

[3] The *Skibbe* court cited two cases which also support Geiger's position. *See Skibbe*, 2007 WL 2874035, at *11 n.3. In *Osbun v. Auburn Foundry, Inc.*, 293 F. Supp. 2d 863, 866 (N.D. Ind. 2003), the defendant relied on surveillance footage in denying the plaintiff benefits. The footage depicted the plaintiff driving, carrying a five-gallon water jug, picking up two bricks, picking up two children's tricycles, attaching a trailer to a vehicle, and cleaning two vehicles. *Osbun*, 293 F. Supp. 2d at 866. The court concluded that the footage was insufficient to support a denial of benefits, reasoning that "evidence that [the plaintiff] can perform light physical tasks for 1.5 hours over two days falls far short of demonstrating that he is capable of sustaining a job." *Id.* at 869–70. Similarly, in *Mullally v. Boise Cascade Corp. Long Term Disability Plan*, No. 04 C 412, 2005 WL 66070, at *7 (N.D. Ill. Jan. 11, 2005), the court rejected the defendant's reliance on surveillance footage showing the plaintiff moving a bicycle because such footage "only reveal[ed] that, for limited periods of time, Plaintiff was able to complete certain activities." The footage "d[id] not demonstrate Plaintiff is able to work full time." *Mullally*, 2005 WL 66070, at *7.

*Life Ins. Co.*, No. 04 C 6228, 2006 WL 2794969, at *10 (N.D. Ill. Sept. 28, 2006) (declining to award fees to a defendant in part because the plaintiff "had a finding of disability from the Social Security Administration . . . rendered after his Plan remedies were exhausted," which could have "reasonably . . . led plaintiff to believe that he might win [his] suit"). Given the reasonableness of challenging Aetna's decision when it (as well as the Social Security Administration) had previously concluded that she was disabled, the Court does not find Geiger to have acted in bad faith or for purposes of harassment.

In short, although the Court concluded in its thirty-seven-page opinion that Geiger's arguments did not ultimately justify overturning Aetna's discretionary denial-of-benefits determination, her litigation position was not so lacking in merit as to justify awarding fees to Aetna. As Aetna points, the Court rejected Geiger's arguments in its summary judgment opinion. (R. 72 at 4–9). That the Court disagreed with Geiger's contentions—which were occasionally accompanied by the sort of puffery typical of litigants both unsuccessful and triumphant—however, does not mean that her position lacked substantial justification when viewing the litigation as a whole.

The five-factor tests does not alter the Court's conclusion. As for the first factor—the degree of the offending parties' culpability or bad faith—the Court has already concluded that Geiger's position was substantially justified, and there is no indication Geiger acted in bad faith or with an improper purpose in litigating her claim. Furthermore, the fact that Geiger is an individual plaintiff suing a large insurance company for disability benefits lessens her level of "culpability." As the Seventh Circuit has explained:

> [T]he "culpability" of a losing plaintiff significantly differs from that of a losing defendant. A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the

> other hand, will not necessarily be found "culpable," but may be
> only in error or unable to prove his case.

*Marquardt*, 652 F.2d at 720; *see also Pa. Chiropractic*, 2016 WL 2958323, at *4–5.  Geiger

swung and missed, but she did not act in a manner that the Court finds "culpable."  The first

factor therefore weighs in her favor.

The fifth factor—the relative merits of the parties' positions—weighs in Aetna's favor

"for the simple reason that [Aetna] won and [Geiger] lost."  *Pa. Chiropractic*, 2016 WL

2958323, at *7.  This factor, however, weighs only slightly in Aetna's favor because Geiger's

position was substantially justified.  *See id.* ("[T]he relative merits of the parties' positions is an

oblique way of asking whether the losing party was substantially justified in contesting his

opponent's claim or defense." (internal quotation marks omitted) (quoting *Sullivan v. William A.

Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007)).

The remaining factors are—at best for Aetna—neutral.  The second factor concerns

Geiger's ability to pay Aetna $40,000 to cover its fees.  The Seventh Circuit has said that when

employees sue under ERISA, they "will be hard pressed" to pay their own attorneys' fees as well

as those of their adversaries.  *Marquardt*, 652 F.2d at 720–21.  "Thus, the 'ability to pay' factor

will rarely weigh in favor of an award of attorneys' fees to a defendant."  *Id.* at 721; *see also

Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 129 (7th Cir. 1991) ("[W]e must keep in

mind ERISA's essential remedial purpose: to protect beneficiaries of pension plans.  'Adherence

to this policy often counsels against charging fees against ERISA beneficiaries since private

actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans

are important mechanisms for furthering ERISA's remedial purpose.'" (quoting *Nachwalter v.

Christie*, 805 F.2d 956, 962 (11th Cir. 1986))); *Hakim*, 901 F. Supp. 2d at 1054 ("To saddle a

plan participant who brings a good-faith action with crippling attorneys' fees . . . would thwart

ERISA's purpose."). Geiger filed a declaration that her sole source of income is $2,240 in Social Security benefits and that she has no significant assets. (R. 73-1.) Aetna counters by arguing that Geiger submitted insufficient proof of her inability to pay because she failed to attach bank statements or tax returns. (R. 74, Def.'s Reply, at 8–9.) While $40,000 is a hefty sum for nearly any individual plaintiff and the Court has no reason to doubt Geiger's representations regarding her wealth, even accepting Aetna's argument, the ability-to-pay factor is neutral, as Aetna does not provide any reason to believe Geiger can cover a $40,000 award of attorneys' fees.

With respect to the third factor—whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances—"[a] grant of attorneys' fees may have a chilling effect on beneficiaries seeking redress for legitimate claims, while a denial of attorneys' fees may encourage lawsuits by parties with no chance of success." *Hakim*, 901 F. Supp. 2d at 1053. The Court will therefore treat this factor as neutral. *Id.* (treating this factor as neutral where a defendant sought fees under ERISA); *see also Pa. Chiropractic*, 2016 WL 2958323, at *6–7 (same).

Finally, with respect to the fourth factor—the amount of benefit conferred on members of the pension plan as a whole—Aetna argues that it is "irrelevant given that this is an 'individual dispute.'" (R. 72 at 12 (quoting *Hakim*, 901 F. Supp. 2d at 1053).) The Court assumes Aetna's position is correct, as doing so does not affect the resolution of the current motion.

In all, three factors are neutral, and only the fifth factor slightly supports a fee award while the first factor decidedly does not. The five-factor test does not lead to a different conclusion than the substantially-justified test. Moreover, the ultimate inquiry of both tests is whether "the losing party's position [was] substantially justified and taken in good faith, or w[hether] that party simply out to harass its opponent." *Kolbe*, 657 F.3d at 506 (quoting *Quinn*,

161 F.3d at 478). Given that the Court has concluded that Geiger was substantially justified and did not act in bad faith or for purposes of harassment, the Court has little trouble exercising its discretion to deny a fee award.[4]

## II. The Court grants Aetna's motion for $17.50 in costs

As discussed above, Rule 54(d)(1) and its presumption in favor of awarding costs to a prevailing party applies to Aetna's request for costs. Because the Seventh Circuit has said that postage is a recoverable cost, *Tchemkou*, 517 F.3d at 512, and because Geiger does not make an argument to the contrary, the Court grants Aetna's motion to recover the reasonable sum of $17.50 in costs.[5]

---

[4] The Court notes that Aetna's reliance on *Little v. Cox's Supermarkets*, 71 F.3d 637 (7th Cir. 1995), is misplaced. (*See, e.g.*, R. 74 at 5–6.) In *Little*, the Seventh Circuit merely found that the district court did not abuse its discretion in awarding fees to a prevailing ERISA defendant. *See* 71 F.3d at 644–45. Moreover, ERISA cases are highly fact sensitive. That a court chose to exercise its discretion to award fees in one case has little to do with whether a court will do the same in another case with different facts.

[5] Geiger argues that the court in *Hakim* "ruled that 29 U.S.C. § 1132(g) applies both to requests for fees as well as costs." (R. 73 at 2.) There are two problems with this argument. First, the *Hakim* court did not have the benefit of the Supreme Court's decision in *Marx* or the Seventh Circuit's decision in *Leimkuehler*, which made clear that § 1132(g) does not displace Rule 54(d). Second, even though the *Hakim* court considered a request for costs under § 1132(g), it declined to use the "substantially justified test" from the ERISA-attorneys'-fees context. *See Hakim*, 901 F. Supp. 2d at 1054–55. Instead, the court "conclude[d] that a sensible approach . . . is to borrow the widely-used standard for awarding costs under Rule 54(d)(1)." *Id.* at 1055. Thus, even if Geiger were correct that § 1132(g)(1) applied and Rule 54(d) did not, the Court would follow the approach in *Hakim* and still award Aetna costs. *See id.* at 1054–58 (awarding costs to a prevailing defendant while denying a motion to award attorneys' fees).

**CONCLUSION**

For the foregoing reasons, the Court grants Aetna's motion with respect to its request for costs but denies its motion with respect to its request for attorneys' fees.

DATED: September 27, 2016                                 ENTERED

                                              AMY J. ST. EVE
                                              United States District Court Judge